LOW KWAI et ux. v. BACKUS, Commissioner of Immigration.

(Circuit Court of Appeals, Ninth Circuit. February 14, 1916.)

No. 2522.

ALIENS ☞32—DEPORTATION—PROCEEDINGS TO DEPORT—STATUTORY PROVISIONS.

Immigration Act Feb. 20, 1907, c. 1134, § 3, 34 Stat. 899, as amended by Act March 26, 1910, c. 128, § 2, 36 Stat. 264 (Comp. St. 1913, § 4247), provides that any alien practicing prostitution after entering the United States shall be deported as provided in sections 20 and 21. Section 21 provides that, if the Secretary of Commerce and Labor is satisfied that an alien is subject to deportation, he shall cause such alien to be taken into custody and returned to the country whence he came. A commissioner of immigration applied to the Secretary of Labor for a warrant for the arrest of an alien on the ground that it was stated from an anonymous source that she was practicing prostitution. The Secretary signed a warrant directing that she be arrested, and granted a hearing, and transmitted such warrant to the commissioner of immigration, with a direction not to execute it unless his investigation developed facts justifying such action. *Held*, that under the statute it is the Secretary who must be satisfied that the alien is subject to deportation, and where the Secretary apparently was not satisfied of such fact he had no authority to authorize the commissioner of immigration to satisfy himself on this point, and thus decide the question committed by Congress to the Secretary.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec. Dig. ☞32.]

Gilbert, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the First Division of the Northern District of California; Maurice T. Dooling, Judge.

Habeas corpus by Low Kwai and wife against Samuel W. Backus, as Commissioner of Immigration of the Port of San Francisco. From an order discharging the writ, and remanding one of the petitioners to custody for deportation, the petitioners appeal. Reversed and remanded, with directions.

Wm. Hoff Cook and Geo. A. McGowan, both of San Francisco, Cal., for appellants.

John W. Preston, U. S. Atty., and Walter E. Hettman, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before GILBERT and ROSS, Circuit Judges, and RUDKIN, District Judge.

ROSS, Circuit Judge. This is an appeal from an order discharging a writ of habeas corpus in behalf of the female appellant, Mrs. Low Kwai, alias Ho Shee, and remanding her to custody for deportation.

It appears from the record that she was admitted into this country as the wife of the appellant Low Kwai, who, it appears, was a native of this country. Subsequently she was arrested by an immigration officer on the ground that she was practicing prostitution, and

after various proceedings set forth in the record, resulting in the finding that she was such prostitute and never was the wife of Low Kwai, was ordered·deported.

If the immigration officer was legally authorized to proceed against the woman, we would not have the slightest difficulty in affirming the order; but was he so authorized? is the real, and the very important, question in the case. We say important, because if, after due examination, an alien is admitted into this country, an immigration officer can, without legal warrant and of his own motion, arrest such alien upon the ground that he or she is engaged in a business denounced by the law, and thus initiate proceedings that may result in an order for the deportation of such alien, as the present proceeding has .done, there would be no safety for any alien so permitted to enter the country. No such provision of law has been cited, and we think it safe to say that no such provision can be found.

By the act of March 26, 1910 (36 Stat. 263), Congress so amended section 3 of the Act of February 20, 1907 (34 Stat. 898), entitled "An act to regulate the immigration of aliens into the United States," as to read in part as follows:

"Sec. 3. That the importation into the United States of any alien for the purpose of prostitution or for any other·immoral purpose is hereby forbidden; and whoever shall, directly or indirectly, import, or attempt to import, into the United States, any alien for the purpose of prostitution or for any other immoral·purpose, or whoever shall hold or attempt to hold any alien for any such purpose in pursuance of such illegal importation, or whoever shall keep, maintain, control, support, employ, or· harbor in any house or other place, for the purpose of prostitution or for any other immoral purpose, in pursuance of such illegal importation, any alien, shall, in every such case be deemed guilty of a felony, and on conviction thereof be imprisoned not more than ten years and pay a fine of not more than five thousand dollars. * * * Any alien who shall be found, an inmate of or connected with the management of a house of prostitution or practicing prostitution after such alien shall have entered the United States * * * shall be deemed to be unlawfully within the United States and shall be deported in the manner provided by sections 20 and 21 of this act"—namely, the act of February 20,,1907.

Section 21 of .the last-mentioned act provides, among other things:

"That in case the Secretary of Commerce and Labor shall be satisfied that an alien has been found in the United States in violation of this act, or that an alien is subject to deportation under the provisions of this act or of any law of the United States, he shall cause such alien within the period of three years after landing or entry therein to be taken into custody and returned to the country whence he came, as provided by section 20 of this act."

And by section 22 of the act of February 20, 1907, it is provided, among other things:

"That the Commissioner-General of Immigration, in addition to such other duties as may by law be assigned to him, shall, under the direction of the Secretary of Commerce and Labor, have charge of the administration of all laws relating.to the immigration of aliens into the United States, and shall have the control, direction, and supervision of all officers, clerks, and employés appointed thereunder. He shall establish such rules and regulations, prescribe such forms of bond, reports, entries, and other papers, and shall issue from time to time such instructions, not inconsistent with law, as he shall deem best calculated for carrying out the provisions of this act, and for protecting the United States and aliens migrating thereto from fraud and

loss, and shall have authority to enter into contract for the support and relief of such aliens as may fall into distress or need public aid; all under the direction or with the approval of the Secretary of Commerce and Labor."

It will be seen from the provisions of section 21 above cited that the power to cause an alien found in the United States in violation of the act to be taken into custody for return to the country whence he came is given to the Secretary of Commerce and Labor, and to no one else.

Now, turning to the record in the present case, it is seen that the proceeding against the Chinese woman here in question was initiated by this "Application for Warrant of Arrest under sections 20 and 21 of the Act of February 20, 1907":

U. S. Department of Labor,
Immigration Service.

No. 12020-190. (Place) Angel Island Station, S. F. Cal.,
April 2, 1913, ———— 191——.

The undersigned respectfully recommends that the Secretary of Labor issue his warrant for the arrest of Ho Shee, or Haw Shee, the alien named in the attached certificate, upon the following facts which the undersigned has carefully investigated, and which, to the best of his knowledge and belief, are true:

(1) (Here state fully facts which show alien to be unlawfully in the United States. Give sources of information, and, where possible, secure from informants and forward with this application duly verified affidavits setting forth the facts within the knowledge of the informants.)

Herewith find verification of landing. It is stated from an anonymous source that this woman is now practicing prostitution in either the Oriental Hotel or the Republic Hotel, keeping one of the rooms in either hotel from time to time.

She was landed as the wife of a native, but her husband deserted her.

(2) The present location and occupation of above-named alien are as follows: ——————————.

Pursuant to rule 22 of the Immigration Regulations there is attached hereto and made a part hereof the certificate prescribed in subdivision 2 of said rule, as to the landing or entry of said alien, duly signed by the immigration officer in charge at the port through which said alien entered the United States. (Signature) [Signed] H. Edsell,
(Official Title) Acting Commissioner.

The record further shows that, based upon that application, the Secretary of Commerce and Labor on the 11th day of April, 1913, signed a warrant directing the commissioner of immigration at Angel Island station, San Francisco, Cal., to take the woman in question into custody, "and grant her a hearing to enable her to show cause why she should not be deported in conformity with law," and transmitted the said warrant with this letter:

Department of Labor,
Washington.

No. 53575/255. April 11, 1913.
Commissioner of Immigration, Angel Island Station, San Francisco, Cal.

Pursuant to your request of the 2d instant, No. 12020/190, there is transmitted herewith warrant for the arrest of the Chinese alien Ho Shee, or Haw Shee, alias Ho Shi. This warrant should not be executed, however, unless your investigation develops facts justifying such action. Form 533, forwarded with your application, is inclosed, as requested.
[Signed] W. B. Wilson, Secretary.

It is perfectly manifest that by this action of the Secretary of Commerce and Labor he left it to the commissioner of immigration to decide what Congress committed to the Secretary of Commerce and Labor to decide. It is, according to the express language of the act of Congress, as has been seen, the *Secretary of Commerce and Labor* who shall be satisfied that the alien has been found in the United States in violation of law and therefore subject to deportation, and who, upon being so satisfied, "shall cause such alien, within the period of three years after landing or entry therein, to be taken into custody and returned to the country whence he came, as provided by section 20 of" the act of February 20, 1907.

In this instance the acting commissioner of immigration undertook, as has been seen, to satisfy the Secretary of Commerce and Labor that the woman here in question had violated the law, by simply saying:

"It is stated from an anonymous source that this woman is now practicing prostitution in either the Oriental Hotel or the Republic Hotel, keeping one of the rooms in either hotel from time to time. She was landed as the wife of a native, but her husband deserted her."

The mere statement from an anonymous source that the woman referred to was violating the law evidently, and very properly, did not satisfy the Secretary of such fact, and, instead of requiring some sufficient evidence thereof, he undertook to depute to the *Commissioner of Immigration* at Angel Island, Cal., to satisfy *himself,* and thus to decide the question authorizing the arrest of the party charged that was committed by Congress to the Secretary of Commerce and Labor only. That course, in our opinion, was wholly unauthorized by the statute.

It results that the order appealed from must be reversed, and the cause remanded, with directions to discharge the petitioner.

It is so ordered.

GILBERT, Circuit Judge (dissenting). I dissent on two grounds.

First. The provisions of the statute were substantially complied with. The application for the warrant of arrest was made on April 2, 1913. Nine days later it was granted, but by the Secretary's order, which accompanied it, it was not to be executed "unless your investigation develops facts justifying such action." This instruction was obeyed, and the appellant was not arrested until October 17, 1913, and after evidence was furnished in the sworn statements of four witnesses which fully justified the arrest. "Irregularities in the order of arrest do not affect the status of an alien held upon a warrant of deportation after a fair hearing." United States v. Uhl, 211 Fed. 628, 128 C. C. A. 560; United States v. Williams, 200 Fed. 538, 118 C. C. A. 632. In Healy v. Backus, 221 Fed. 358, 137 C. C. A. 166, answering the contention that there was a fatal variance between the application and the warrant of arrest, this court said:

"The objections go rather to the regularity of the proceedings for the arrest and examination of petitioners than to the substance of the inquiry. The proceedings are by nature summary, and necessarily so. No formal charge or pleadings are required, nor does the doctrine of variance have application,

provided the alien be given sufficient information of the acts relied upon to bring him within the excluded classes to enable him to offer testimony at the hearing directed to be had by the warrant of arrest."

And in Ex parte Hamaguchi (C. C.) 161 Fed. 185, Judge Wolverton said:

"The summary proceeding provided by law does not require that technical regard for forms that is deemed essential in criminal proceedings, and, having had a full hearing, whereat it was developed that he is unlawfully within the country, and the finding and recommendation of the inspector in charge being against him, I am not disposed to require that the procedure be gone through with again for the sake of stricter observance of form; the law having been observed in substance."

So in Siniscalchi v. Thomas, 195 Fed. 701, 115 C. C. A. 501, it was held that the fact that a warrant of deportation of an alien was based in part on a fact not charged in the warrant of arrest is not a fatal objection, where it appears that the alien was given a fair hearing on his charge. In Toy Tong v. United States, 146 Fed. 343, 76 C. C. A. 621, Judge Gray, speaking for the Circuit Court of Appeals for the Third Circuit, said:

"But the sufficient answer to appellants' point is that the defendants were before the commissioner and before the court, and objections to the validity of the process of arrest were not available to oust the jurisdiction. 'No formal complaint or pleadings are required, and the want of it then does not affect the authority of the judge, or the validity of the statute.'"

Second. This is a habeas corpus proceeding, and in such a case the rule is well settled that the petitioner cannot be discharged on account of defects in the original arrest or commitment. In Nishimura Ekiu v. United States, 142 U. S. 651, 12 Sup. Ct. 336, 35 L. Ed. 1146, the court said:

"A writ of habeas corpus is not like an action to recover damages for an unlawful arrest or commitment, but its object is to ascertain whether the prisoner can lawfully be detained in custody; and if sufficient ground for his detention by the government is shown, he is not to be discharged for defects in the original arrest or commitment"—citing Ex parte Bollman, 4 Cranch, 75, 114, 125, 2 L. Ed. 554; Coleman v. Tennessee, 97 U. S. 509, 519, 24 L. Ed. 1118; United States v. McBratney, 104 U. S. 621, 624, 26 L. Ed. 869, and other cases.

This rule is made imperative by section 761 of the Revised Statutes (Comp. St. 1913, § 1289), which requires the court, justice, or judge granting the writ on the hearing "to dispose of the party as law and justice require." This means, not as law and justice required at the time of the arrest, but as law and justice require at the time of the hearing. Iasigi v. Van de Carr, 166 U. S. 391, 17 Sup. Ct. 595, 41 L. Ed. 1045. And in Motherwell v. United States, 107 Fed. 437, 455, 48 C. C. A. 97, 115, the Circuit Court of Appeals for the Third Circuit said:

"The intent of section 761 is that the party seeking a discharge through habeas corpus proceedings should be disposed of as law and justice at the time of such disposition shall require."

The judgment of this court discharging the petitioner is empty and futile and it does not affect the status of the petitioner. It leaves her subject to a repetition of the proceeding for her deportation. In

Re Boardman, 169 U. S. 39, 18 Sup. Ct. 291, 42 L. Ed. 653, the court said:

"The object of the writ is to ascertain whether the prisoner applying for it can legally be detained, and it is the duty of the court, justice, or judge granting the writ, on hearing, 'to dispose of the party as law and justice may require.'"

And in Chow Loy v. United States, 112 Fed. 354, 361, 50 C. C. A. 279, 286, the Circuit Court of Appeals for the Second Circuit, in holding that the prisoner could not be discharged on a writ of habeas corpus because of defects or irregularities in the form of commitment, said:

"Upon the record before the Circuit Court it appeared that the petitioner for the writ was a person not entitled to be within the United States, and liable to be deported; that he had no right to be discharged from custody, but only to be placed in charge of the officers of the United States for deportation. The Circuit Court therefore properly refused the petition for the writ of habeas corpus."

I submit that the court below very properly followed this rule in denying the discharge of the appellant.