**Norman E. SMITH, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 14599.**

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 19, 1959.

Decided July 7, 1959.

held it inadmissible by virtue of physical or mental coercion, actual or inherent. Can it be possible to say that a court could, on Monday, hold a confession obtained by force and duress inadmissible, and on Wednesday allow it in to impeach the defendant's veracity? Courts, when faced with involuntary confessions, have often denied their use for impeachment. See People v. Adams, 1953, 1 Ill.2d 446, 115 N.E.2d 774; Pierson v. State, 1943, 145 Tex.Cr.R. 388, 168 S.W. 2d 256.

---

Wilbur K. Miller and Bastian, Circuit Judges, dissented.

---

Mr. Burke Marshall, Washington, D. C. (appointed by this court) for appellant.

Mr. Carl W. Belcher, Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty., and Nathan J. Paulson, Asst. U. S. Atty., were on the brief, for appellee.

Before PRETTYMAN, Chief Judge, and EDGERTON, WILBUR K. MILLER, BAZELON, FAHY, WASHINGTON, DANAHER, BASTIAN and BURGER, Circuit Judges, sitting en banc.

PER CURIAM.

The action of the District Court in refusing to entertain the motion filed February 25, 1958, is reversed and the case is remanded for hearing and further proceedings on that motion under Title 28 U.S.C. § 2255, on the issue of appellant's competency at the time of his trial.

Circuit Judge FAHY files an opinion, in which Circuit Judges EDGERTON, BAZELON and WASHINGTON join, concurring in the judgment of the court.

Circuit Judge DANAHER files an opinion, in which Circuit Judge BURGER joins, concurring in the judgment of the court.

Chief Judge PRETTYMAN files an opinion concurring in the judgment of the court.

Circuit Judges WILBUR K. MILLER and BASTIAN file separate dissenting opinions, each however concurring with the other.

FAHY, Circuit Judge, with whom EDGERTON, BAZELON and WASHINGTON, Circuit Judges, join.

On April 6, 1957, appellant filed in the District Court, where he had been sentenced for robbery, a motion under 28 U.S.C. § 2255 (1952) to vacate the sentence, alleging that his counsel had been ineffective at the trial. The motion was denied and no appeal was taken. On February 25, 1958, appellant filed a second or successive motion to vacate the same sentence, raising for the first time the issue of his "mental competency to stand trial." This motion referred to 18 U.S.C. § 4245, but was treated by the court as coming within § 2255 as well. I agree this was proper, and the United States does not contend to the contrary. Indeed, the opinion of the District Court, see United States v. Smith, D.C.D.C. 1958, 160 F.Supp. .256, is primarily devoted to consideration of the motion as one filed under § 2255.

The motion of February 25, 1958, alleged that upon examination by a psychiatrist at the District of Columbia Reformatory appellant's I.Q. had been found to be 53-Defective, less than "borderline mental defective."[1] If appel-

---

1. Gates, Jerslid, McConnell, and Challman, Educational Psychology 248–49 (3d ed. 1948), states in effect that an intelligence quotient of 53 places one among the "feebleminded" or "mental defec- tives" barely above the level of an "imbecile." Strecker, Ebaugh, and Ewalt, Practical Clinical Psychiatry 327 (7th ed. 1951), sets the I.Q. of imbeciles from 20 to 50, and morons from 50 to 70.

lant when tried was not mentally competent to understand the proceedings or properly to assist in his defense the sentence should have been vacated. Seidner v. United States, 104 U.S.App.D.C. 214, 260 F.2d 732; Lloyd v. United States, 101 U.S.App.D.C. 116, 247 F.2d 522. And see Massey v. Moore, 348 U.S. 105, 75 S.Ct. 145, 99 L.Ed. 135. Nevertheless the court refused to entertain the motion, followed by this appeal. The court relied upon the provision in § 2255 which reads,

> "The sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner."[2]

The court concluded that since the second motion attacked the same sentence it was for relief similar to that sought in the earlier motion and need not be entertained. The court also said that it was motivated by the fact that the motion was based manifestly on an afterthought, and discussed its reasons for so concluding. But the precise ruling of the court was that it would not entertain the motion. The motive of the court does not here alter the ruling made. The learned District Judge was emphatic that he would not entertain the motion, could not be required to do so, and that his decision not to do so was unreviewable. Accordingly, as it seems to me, we are called upon to consider the important questions decided by the District Court in disposing of the case.

In holding that its refusal to entertain the motion was unreviewable the court was in error. The United States does not contend otherwise even if the motion were for relief similar to that sought in the earlier motion. Section 2255 itself provides that an order entered on a motion under that section may be the subject of an appeal "as from a final judgment on application for a writ of habeas corpus," reviewable under 28 U.S.C. § 2253 (1952). The language of § 2255 that the sentencing court "shall not be

---

2. In order that our opinion may be complete within itself we set forth § 2255 in full:

"§ 2255. Federal custody; remedies on motion attacking sentence.

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A motion for such relief may be made at any time.

"Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there

has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

"A court may entertain and determine such motion without requiring the production of the prisoner at the hearing.

"The sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner.

"An appeal may be taken to the court of appeals from the order entered on the motion as from a final judgment on application for a writ of habeas corpus.

"An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention."

required" to entertain a second or successive motion for similar relief does not prohibit an appellate court from either reviewing the action of the District Court or, in appropriate circumstances, from directing that the motion be entertained. The language simply means that the District Court is not required to entertain a second or successive motion for similar relief but may do so in the exercise of a sound discretion, its action being reviewable for abuse of discretion. Turner v. United States, 103 U.S.App. D.C. 313, 258 F.2d 165. And see Dunn v. United States, 6 Cir., 1956, 234 F.2d 219, 221, certiorari denied 352 U.S. 899, 77 S.Ct. 140, 1 L.Ed.2d 90, and Chief Judge Laws' opinion in United States v. Newman, D.C.D.C.1954, 126 F.Supp. 94.[3] In short, the refusal of the court to entertain the motion was judicial action subject to judicial review under the terms of § 2255 itself.

When a second or successive motion is not for similar relief, and raises an issue appropriate for decision on collateral attack upon a sentence, no discretion resides in the court to refuse to entertain the motion. *A fortiori* the refusal to do so is reviewable on appeal. The District Court is required to entertain a second or successive motion which is not for similar relief, to apply the basic provision of § 2255, which reads,

"Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon,"

and to determine the issues under the procedures set forth in the remainder of the section, note 2, supra.

As I interpret the statutes the motion alleging incompetency at the time of trial was not for relief similar to that sought in the earlier motion alleging ineffectiveness of counsel. Accordingly, the motion should have been entertained. I reach this conclusion on the basis of the language of § 2255, construed in light of the history and purpose of this section and of the related statute, 28 U.S.C. § 2244 (1952), infra, notwithstanding some ambiguities in the history of the two statutes.

As explained in United States v. Hayman, 342 U.S. 205, 72 S.Ct. 263, 96 L. Ed. 232, § 2255 was enacted to relieve district courts near large federal prisons of numerous applications for writs of habeas corpus filed by the prisoners; these courts were overburdened by such applications and, moreover, did not have readily available the records of the courts where the applicants had been tried and sentenced.

The Supreme Court quotes the statement submitted to Congress on behalf of the Judicial Conference Committee on Habeas Corpus Procedure:

"The [§ 2255] motion remedy broadly covers all situations where the sentence is 'open to collateral attack.' As a remedy, it is intended to be as broad as habeas corpus."

342 U.S. at page 217, 72 S.Ct. at page 271. The Court goes on to state,

"Nowhere in the history of Section 2255 do we find any purpose to impinge upon prisoners' rights of

3. An analogy which might be helpful is noted. In 28 U.S.C. § 1915 (1952) it is provided that an "appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith." Were this read in isolation from the general plan of judicial administration a certificate by a trial judge that an appeal is not taken in good faith would end this matter. But this is not so, as the Supreme Court has stated:

"Such certification is not final in the sense that the convicted defendant is barred from showing that it was unwarranted and that an appeal should be allowed. Of course, certification by the judge presiding at the trial carries great weight but, necessarily, it cannot be conclusive. Upon a proper showing a Court of Appeals has a duty to displace a District Court's certification." Johnson v. United States, 352 U.S. 565, 566, 77 S. Ct. 550, 551, 1 L.Ed.2d 593.

collateral attack upon their convictions. On the contrary, the sole purpose was to minimize the difficulties encountered in habeas corpus hearings by affording the same rights in another and more convenient forum."

342 U.S. at page 219, 72 S.Ct. at page 272.

To complete the statutory plan there is a complementary provision in § 2255 which actually eliminates the availability of habeas corpus where the new motion procedure can be used. See the last paragraph of § 2255, note 2, supra. In this manner the legislation is rounded out so as to force collateral attacks into the sentencing courts through § 2255 motions. It follows that a sentencing court is required to entertain a second or successive § 2255 motion in those instances which would require, except for § 2255, the entertainment of a second or successive application for a writ of habeas corpus.

Our inquiry, then, is to ascertain when a second or successive application for a writ of habeas corpus, putting in issue the validity of a sentence and consequent detention, must be entertained. Again Congress has supplied the answer. Such an application must be entertained—there is no discretion to refuse to do so—when it presents "new ground not theretofore presented and determined." 28 U.S.C. § 2244 (1952), set forth in full in the margin.[4]

It follows that a § 2255 motion is required to be entertained by the sentencing court when it presents ground "not theretofore presented and determined." This is "new ground" which prevents the motion from being one for "similar relief." This is so although the ultimate relief sought may be said to be similar in the sense that the second motion, like the earlier one, seeks a new trial or vacation or correction of sentence. Such relief is not deemed similar if sought upon a dissimilar ground of collateral attack. Likewise, though both earlier and later motions seek relief due to an asserted violation of the Constitution or laws of the United States, or lack of jurisdiction in the court to have imposed the sentence, such relief is not deemed similar when sought because of a dissimilar violation of the Constitution or laws of the United States or because of a dissimilar jurisdictional ground.[5]

Due to the historical function of habeas corpus the doctrine res judicata has never applied to the writ, see Stewart v. Overholser, supra, and cases there reviewed. The doctrine, therefore, does not apply to § 2255 motions. See Heflin v. United States, 358 U.S. 415, at page 420, 79 S.Ct. 451, at page 454, 3 L.Ed. 2d 407, concurring opinion. While it is true that the ground of the successive application in Stewart v. Overholser was new in a factual sense, newness in habeas corpus proceedings has never been limited to new facts; it has always included different legal theory.[6] Price v. John-

---

4. 28 U.S.C. § 2244 (1952):
"No circuit or district judge shall be required to entertain an application for a writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a court of the United States, or of any State, if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus and the petition presents no *new ground not theretofore presented and determined*, and the judge or court is satisfied that the ends of justice will not be served by such inquiry." (Emphasis supplied.)
This statutory provision is a legislative restatement of the decisional law. See

Stewart v. Overholser, 87 U.S.App.D.C. 402, 186 F.2d 339.

5. Compare dissenting opinion in Belton v. United States, 104 U.S.App.D.C. 81, 259 F.2d 811.

6. It does not include, however, the repetition of a particular alleged legal infirmity previously adjudicated adversely to the prisoner. The court is not required to consider again such a contention, though it has discretion to do so, Stewart v. Overholser, supra. And new ground also does not include new argument in support of old ground. Here too entertainment by the sentencing court is discretionary rather than mandatory.

ston, 334 U.S. 266, 68 S.Ct. 1049, 92 L. Ed. 1356. Where the legal theory is fundamentally different, "the statute [§ 2255] does not give me any discretion to refuse to entertain the new motion." Judge Wyzanski's language in Green v. United States, D.C.D.Mass.1958, 158 F. Supp. 804, 808, affirmed on other grounds, 1 Cir., 1958, 256 F.2d 483. See, also, United States v. Newman, supra,[7] and United States v. Wantland, 7 Cir., 1952, 199 F.2d 237.

Unless § 2255 is thus construed to require the entertainment of a second or successive motion on ground which would be considered new in a second or successive application for a writ of habeas corpus the statutory structure carefully erected by Congress would collapse and the difficulties of judicial administration sought to be remedied would largely recur: second or successive collateral attacks would be forced into the habeas corpus courts notwithstanding the firm purpose of Congress to channel them into the courts where the prisoners were tried and sentenced to the full extent those courts could adequately dispose of them. There is no suggestion the sentencing court can not dispose of this second motion as adequately as a habeas corpus court.

It will be observed that the duty of the sentencing court to entertain a second or successive motion does not depend (a) upon a showing by the movant that if the ground advanced could have been but was not raised in an earlier motion he had justifiable reason for not previously asserting it, or (b) upon a showing that he was unaware of the significance of relevant facts. Such factors are relevant where the court has discretion, or where there is a problem of abuse of the processes of the court. They are irrelevant to a determination of what constitutes a second or successive motion for similar relief. In Price

v. Johnston the Supreme Court required the District Court to entertain a fourth application for a writ of habeas corpus. Moreover, in rejecting the claim that the writ was unavailable because of abuse, the Court held that in order to defend on that ground the Government must assert it in the District Court, in which event a preliminary and separate disposition of that issue would be required. The Court said, 334 U.S. at pages 291–292, 68 S.Ct. at page 1063:

> "[W]e do not believe that the burden was on the petitioner of affirmatively alleging in the first instance that he had acquired new information or that he had adequate reasons for not raising sooner the issue * * *. It was enough if he presented an allegation and supporting facts which, if borne out by proof, would entitle him to relief." [8]

The Court had pointed out that "the primary purpose of a *habeas corpus* proceeding is to make certain that a man is not unjustly imprisoned." This being so there is no discretion to deny a prisoner an opportunity to demonstrate the truth of allegations that his imprisonment is illegal on ground not previously asserted, unless perchance it is found that he has so abused the processes of the court that its doors are closed to him.

In Price v. Johnston the Court said:

> "From the facts which we have previously detailed it is evident that this allegation [of the knowing use by the prosecution of false testimony] was not properly raised prior to the amendment of the fourth petition. None of the three prior petitions had made this point."

334 U.S. at page 288, 68 S.Ct. at page 1061.

For the very reason that it had not been previously raised the Court held

---

**7.** The reference of Chief Judge Laws to the "exercise of a sound judicial discretion" at 126 F.Supp. 97 I think refers to the manner of making the determination in the circumstances then before the court.

**8.** The issue was the knowing use by the prosecution of false testimony.

the District Court had erred in dismissing the petition. Yet the prisoner had not excused his failure previously to have raised the point. This made no difference, for the ground was new since it had not been "theretofore presented and determined."

Dunn v. United States, 6 Cir., 1957, 245 F.2d 407, 408, illustrates the application of these principles to a second or successive motion under § 2255. The court there said:

"[I]f appellant's second contention [in the successive motion] presents a new issue for the first time, and the factual allegations with respect thereto are not denied, and no defensive plea in the nature of abuse of judicial process is interposed, under the ruling of the Supreme Court in Price v. Johnston, supra, 334 U.S. 266, 289–294, 68 S.Ct. 1049, 92 L. Ed. 1356, the District Court was in error in dismissing the proceeding without a hearing."

Language in our opinion in Turner v. United States, supra, inconsistent with the foregoing, I think cannot be deemed authoritative. The contrary principles laid down in Price v. Johnston I think apply as though that decision were on a fourth motion under § 2255 rather than on a fourth application for a writ of habeas corpus. For, as the Supreme Court recently said in Heflin v. United States, 358 U.S. 415, 421, 79 S.Ct. 451, 454, 3 L.Ed.2d 407:

"The opinion in Hayman [342 U. S. 205, 72 S.Ct. 263, 96 L.Ed. 232] clearly shows that, 'the sole purpose' of the statute 'was to minimize the difficulties encountered in habeas corpus hearings by affording the *same rights* in another and more convenient forum.' 342 U.S. at page 219, 72 S.Ct. at page 272.

1. What constitutes an abuse of discretion was defined in United States v. McWilliams, 1947, 82 U.S.App.D.C. 259, 261, 163 F.2d 695, 697.

2. And see United States v. Hayman, 1952, 342 U.S. 205, 209 note 4, 72 S.Ct. 263,

(Emphasis in original.) [Concurring opinion of Mr. Justice Stewart for himself and Mr. Justices Frankfurter, Clark, Harlan, and Whittaker. See, also, the main opinion of Mr. Justice Douglas.]"

The action of the District Court of March 21, 1958, in refusing to entertain the motion of February 25, 1958, should be reversed and the case remanded for hearing and further proceedings under § 2255 on the issue of appellant's competency at the time of his trial.

DANAHER, Circuit Judge, with whom BURGER, Circuit Judge, joins (concurring in the result).

I vote to reverse and remand for a determination as to the prisoner's competency to stand trial. Refusing relief, the district judge concluded he possesses an "unreviewable discretion" and wrote that the whole matter had been "entrusted by the Congress to the District Court with finality." I think he was mistaken and that his action is reviewable for abuse of discretion.[1] Section 2255 expressly provides that "An appeal may be taken to the court of appeals from the order entered on the motion * * *."[2]

With the case properly here, we turn to the jurisdictional statute. For years, the Judicial Conference of the United States had been seeking remedial action as to habeas corpus jurisdiction because of repetitious, vexatious and often frivolous post-conviction attacks raised by prisoners whose habeas corpus actions inundated the courts where federal detention centers were located. After the Supreme Court's decision in Price v. Johnston, 1948, 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed. 1356, Congress did not adopt merely the legislation which had been recommended by the judges. In-

267, 96 L.Ed. 232. "Appeals from orders denying motions under Section 2255 are governed by the civil rules applicable to appeals from final judgments in habeas corpus actions. See Mercado v. United States, 1 Cir., 1950, 183 F.2d 486."

stead, Congress went far beyond habeas corpus and sought to include all collateral attack situations. Accordingly, Congress wrote its own Section 2255, described in the Reviser's Note as a "procedure in the nature of the ancient writ of error coram nobis." [3]

For the first time, Congress conferred special jurisdiction upon its creature courts to permit a *federal* prisoner under a federal court sentence to levy a post-conviction attack on that sentence *in the sentencing court.* He might seek relief on *any* ground which rendered his sentence subject to collateral attack as well as upon any of three grounds specifically spelled out in the first paragraph of the statute. Obviously, whether in the nature of coram nobis or as broad as habeas corpus or otherwise, the statute is all-inclusive as it makes available to the prisoner, *on his motion,* the opportunity in the sentencing court to allege and prove circumstances which deprived that court of the power to impose the challenged sentence.

If the motion and the files and the records of the case in the sentencing court conclusively show that the prisoner is entitled to no relief, the prisoner's claim of a right to be released is to be denied.[4] Unless it shall so appear that he is entitled to no relief, the sentencing court *must* grant a prompt hearing and otherwise comply with the directives of the statute.

After the hearing, the sentencing court may accord to the prisoner by way of relief the remedy found to be appropriate in the circumstances disclosed. Exactly what form that relief may take, the court, depending upon the facts, is empowered to order as the third paragraph of the statute specifically provides.

The statute particularizes that the prisoner may not require the sentencing court "to entertain a second or successive motion for similar relief," "relief," *i. e.,* appropriate in the light of the allegations, the issues determined by the judge and the remedy accordingly available. We considered the later motion problem in Turner v. United States, 1958, 103 U.S.App.D.C. 313, 258 F.2d 165. There we held that the District Court had not abused its discretion in refusing relief on the ground that the court was confronted with a second or successive motion for "similar relief." The prisoner's later motion had disclosed no "justifiable reason" or "unawareness," as we explained the terms, id., 103 U.S.App.D.C. at page 315, 258 F.2d at page 167, why his first motion had failed to include allegations essential to his claim.

The petitioner here in his first motion claimed relief on the permissible ground that he had lacked the effective assistance of counsel. Had his prayer been granted, the court might have set aside the conviction and ordered a new trial.

His second motion, now before us, alleges that he was incompetent to stand trial. If that allegation after hearing were found to be so, the entire trial proceeding must be deemed to have been vitiated. His conviction would have been irregular and invalid [5] if he were "so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense," 18 U.S.C. § 4244. So gravely delimiting a mental status might well make apparent entirely valid reasons within the meaning of Turner v. United States, supra, why he had failed to assert such allegations in his first motion. Surely if such allegations be sustained, the judg-

---

3. United States v. Hayman, 342 U.S. at page 218, 72 S.Ct. at page 272.

4. Morris v. United States, 1957, 101 U.S. App.D.C. 296, 248 F.2d 618; Adams v. United States, 1955, 95 U.S.App.D.C. 354, 222 F.2d 45, and the court should cause the record to show that such was the ground of his denial of relief.

5. Such an error has been deemed to be "fundamental" in character and to be reached by a writ in the nature of coram nobis if the movant is not currently a federal prisoner. United States v. Morgan, 1954, 346 U.S. 502, 508, 74 S.Ct. 247, 98 L.Ed. 248; cf. dissent at pages 518–519 of 346 U.S., at page 256 of 74 S.Ct. as to the "comprehensive" scheme.

ment of conviction should be vacated entirely.[6] It may even be developed that he should not have been prosecuted at all. I think this movant was entitled to "relief,"[7] if his allegations could be supported.

In this view, I vote to reverse and remand for a hearing on the motion.[8]

PRETTYMAN, Chief Judge (concurring in the result).

I think Smith's second motion was a "second or successive motion for similar relief" within the meaning of Section 2255. But I join in remanding the case because, although the trial court was not required by the statute to entertain the motion, I think it abused its discretion, in the legal sense of that term, in not entertaining the motion.

Smith's second motion was based upon a ground (alleged mental incompetence) not theretofore presented or determined. But that ground was not new; it existed at the time of his first motion. And Smith makes no allegation that he was then ignorant of the fact of his incompetence or, if he was aware of it, that he had an excuse for failure to present it in that motion. Therefore, when this ground was presented as the basis for a second motion, that motion was a "second or successive motion for similar relief" and a hearing on it was not required by the statute. To state the matter differently: If a second motion under Section 2255 is based upon a ground (factual or legal) available to, and reasonably deemed to have been known by, the movant at the time of his first motion, and presents no justifiable reason why he was previously unable to assert his rights, the second motion is a "second or successive motion for similar relief" and the court is not required to entertain it. This is the interpretation given in Turner v. United States,[1] and I think Turner was correctly decided.

The foregoing interpretation of Section 2255 makes the exemption from required hearing depend upon the grounds presented in a second motion rather than upon the relief sought by the motion. This is a departure from the language of the statute. But the departure is necessary to effectuate the intent of Congress in enacting this remedial statute. The Congress intended a motion under Section 2255 to be as readily available to a sentenced person seeking release from custody as is a petition for *habeas corpus* under the statute enacted at the same time.[2] But, if *habeas corpus* is readily available upon second or successive petitions while second or successive motions under Section 2255 are not required to be entertained, obviously the procedure provided by the latter section

---

6. Had there been a pretrial determination of competency under 18 U.S.C. § 4244, the judge could properly have found from the files and records of the case that the prisoner was entitled to no relief. Lacking that determination of record and on the facts here, a hearing became mandatory. That is all we need decide.

7. As to "the right to be released," secured by the section, as constituting "relief," see Heflin v. United States, 1959, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407.

8. I would reach no habeas corpus question for clearly no habeas corpus application was filed here. Obviously 28 U.S.C. § 2244 applies to habeas corpus where the application is filed in the situs of detention. The last paragraph of § 2255 places a further limitation on habeas corpus jurisdiction. The applica-

tion "shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention." See Meyers v. Welch, 4 Cir., 1950, 179 F.2d 707, 708, written by Circuit Judge Parker. Compare Meyers v. United States, 86 U.S. App.D.C. 320, 321, 181 F.2d 802, 803, certiorari denied, 1950, 339 U.S. 983, 70 S.Ct. 1030, 94 L.Ed. 1387. Congress in its determination to alleviate the problem as presented by the Judicial Conference surely cannot be deemed to have acted as futilely as my colleagues argue.

1. 103 U.S.App.D.C. 313, 258 F.2d 165 (1958).

2. 28 U.S.C. § 2244.

would not be a substitute for *habeas corpus*—not by a great deal. So a second motion under Section 2255 must be held to be as readily available as is a second petition for *habeas corpus* under Section 2244.

The language of the statute on *habeas corpus* (Sections 2243 and 2244) is that a hearing is required on a second petition if the petition presents a "new ground not theretofore presented and determined". It seems to me that my brethren for whom Judge Fahy writes omit the word "new" from their consideration. The *habeas corpus* statute not only requires that a second petition present a ground "not theretofore presented and determined" but requires that this ground be "new". The intended meaning of those words is indicated in a "Statement" of the Judicial Conference Committee on Habeas Corpus Procedure.[3] That this Statement is pertinent as legislative history is established by Heflin v. United States[4] and United States v. Hayman.[5] The Statement outlined the necessity and purposes of two bills[6] which were the forerunners of Sections 2244 and 2255. Two of the purposes of the bills were (1) "to compel petitioner to state in his petition all of the grounds for the writ then known to him" and (2) "to afford unlimited opportunity to present any grounds which petitioner may thereafter discover at any time".

"The [first] purpose is self-explanatory and would seem to require no elaboration. Also see Wong Doo v. United States, 265 U.S. 239, 241 [44 S.Ct. 524, 68 L.Ed. 999] (1924).

"The [second] purpose is brought about by allowing presentation of a subsequent petition based upon 'new' grounds 'not theretofore presented and determined.'"

The Statement also says:

"Since release is sought from commitment after sentence under a criminal charge, the grounds stated in any of these petitions are necessarily confined to alleged unlawful actions in connection with the indictment, the trial, the sentence or the manner or place of executing the sentence under which petitioner is confined. Since these grounds usually have to do with past happenings, it is very rare that a petitioner does not state, or does not have the knowledge from which he could state, in his *first* petition all of the grounds he may ever have." (Emphasis in original.)

The rule universally followed, as I read the authorities,[7] is that a court to which a second petition for *habeas cor-*

---

3. The Senate Report, S. Rep. No. 1559, 80th Cong., 2d Sess. (1948), and the Reviser's Notes to the Revision of Title 28, U.S.Code, specifically state that the language of Section 2244 is that approved by the Judicial Conference in September, 1947. Rep. of Jud. Conf., U.S., 17, 18 (1947). The proposed statute approved by the Conference in 1947 was, with amendments not here relevant, the same as that approved in 1943 and submitted to Congress with the Statement prepared by Circuit Judge Stone. S. 1452, H.R. 4232, 79th Cong., 1st Sess.

4. 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959).

5. 342 U.S. 205, 214–219, 72 S.Ct. 263, 96 L.Ed. 232 (1952).

6. S. 1451, S. 1452, H.R. 4232, H.R. 4233, 79th Cong., 1st Sess. (1945).

7. Slaughter v. Wright, 135 F.2d 613 (4 Cir., 1943); United States ex rel. Karpathiou v. Jordan, 153 F.2d 810 (7 Cir., 1946), certiorari denied 328 U.S. 868, 66 S.Ct. 1372, 90 L.Ed. 1639 (1946); Wong Doo v. United States, 265 U.S. 239, 44 S.Ct. 524, 68 L.Ed. 999 (1924); Salinger v. Loisel, 265 U.S. 224, 44 S. Ct. 519, 68 L.Ed. 989 (1924). Accord: United States ex rel. McCann v. Thompson, 144 F.2d 604, 156 A.L.R. 240 (2 Cir., 1944), certiorari denied 323 U.S. 790, 65 S.Ct. 313, 89 L.Ed. 630 (1944); Jackson v. Gough, 170 F.2d 630 (5 Cir., 1948), certiorari denied 336 U.S. 938, 69 S.Ct. 741, 93 L.Ed. 1097 (1949);

*pus* is presented may take judicial notice of its own records (which include the prior petition) and then has a wide discretion as to granting a hearing. Slightly translated this means that a court is not required to grant a hearing on a second petition for *habeas corpus* if the record on the prior petition affords a reasonable basis for not holding a hearing. Thus, in Stewart v. Overholser,[8] we said, correctly, I think, although by way of *dictum*, that in criminal cases "the legality of the detention usually may be established with finality in one proceeding. Jurisdiction of the court, conduct of the trial, legality of sentence— these do not change, and having once been determined on adequate hearing are not new grounds when again brought forth in another application for the writ." [9] That principle of finality when the facts have not changed was the bedrock of the Stewart case and the cases which were its background.

Some of my brethren say Price v. Johnston [10] is contrary to what I have just been saying. I think that case does not touch our problem. The sole question there, the Court was emphatic in pointing out, concerned abuse of the writ. We are not here concerned with abuse; we are dealing with a statutory interpretation. Moreover that case arose under the old statute, which required a hearing if the petition *on its face* indicated possible relief. The only ruling made in the case was that the Government, if it claimed abuse of the writ, must make its allegation clearly, and that thereafter the burden was on the petitioner to negate the allegation.

Garrison v. Johnston, 151 F.2d 1011 (9 Cir., 1945), certiorari denied 328 U.S. 840, 66 S.Ct. 1009, 90 L.Ed. 1615 (1946).

8. 87 U.S.App.D.C. 402, 186 F.2d 339 (1950).

9. Id. 87 U.S.App.D.C. at page 406, 186 F. 2d at page 343.

10. 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948).

1. The Code provisions involved here, viz. 28 U.S.C. § 2255 and 18 U.S.C. § 4245, will be referred to hereinafter by the section numbers alone.

The history of Sections 2244 and 2255 shows that the words "be required to" were inserted between "shall" and "entertain" in order to allow a judge to exercise his discretion and entertain a meritorious petition which had once been denied. The purpose was not to foreclose review of his action.

It is not necessary for me to repeat my conclusions, already stated in the beginning of this opinion. The reason I think the trial judge "abused his discretion" is that I think, when a person under sentence alleges for the first time in a motion under Section 2255 that he was mentally incompetent to stand trial, and alleges some factual basis for the claim, the allegation is of such a nature that he ought to be given a chance to present, or at least to proffer, his proof; that is, he ought to be granted a hearing on the motion. For the presentation of false statements of fact under oath in such a motion, the perjury statute applies.

WILBUR K. MILLER, Circuit Judge, with whom BASTIAN, Circuit Judge, concurs (dissenting).

This is not a proceeding under 28 U.S.C. § 2255. It was initiated by Smith's motion, filed February 25, 1958, for relief under 18 U.S.C. § 4245,[1] in which he asked the court to determine, under the procedure prescribed by § 4244, his mental competency to stand trial. The motion here under consideration did not mention § 2255, with which Smith was thoroughly familiar, but was carefully and consciously based only on § 4245.[2]

2. This will be seen from an examination of the text of the motion, which is as follows:

"Now comes Norman Smith, petitioner in the above entitled cause in his proper person and moves the court to grant him a hearing to determine his mental competency to stand trial, in accordance with the provisions of sec. 4244 Title 18 U.S.Code, and order the Director of the Bureau of Prisons or such authorized person to make available for the hearing a complete report on the prison psychiatrist's findings in the examina-

The district judge did not "treat" the motion under § 4245 as though it had been made under § 2255; on the contrary, he mistakenly thought the motion was based on both statutory sections. That the judge had this erroneous conception of the present motion is clear from his opinion.[3] Because of this error, he discussed the applicability of both statutes. There is no reason to suppose, however, that the trial judge would have "treated" the motion under § 4245 as having been made also under § 2255, had he not incorrectly thought that in it Smith had in fact relied on § 2255 as well as on § 4245.

In spite of this history, some of my colleagues "treat" the motion under consideration as though it had been based on § 2255, and discuss at length the question whether it is a second motion for relief similar to that asked in Smith's 1957 motion, which actually was based on § 2255. Thus they construe the present motion liberally in favor of the prisoner, and in so doing create and discuss a

tion of your petitioner at D. C. Reformatory, Lorton, Virginia. The jurisdiction of this court to order such hearing on mental incompetency undisclosed at trial —sec. 4245, U.S.Code—

"'Whenever the [D]irector of the Bureau of Prisons shall certify that a person convicted of an offence [sic] against the United States has been examined by the board of examiners referred to in Title 18, United States Code, Sec. 4241, and that there is probable cause to believe that such person was mentally incompetant [sic] at the time of his trial, provided the issue of mental competency was not raised and determined before or during said trial, the Attorney General shall transmit the report of the board of examiners and the certificate of the Direction [sic] of the Bureau of Prisons to the clerk of the [district] court wherein the conviction was had. Whereupon the court shall hold a hearing to determine the mental competency of the accused in accordance with the provisions of sec. 4244 above and with all the powers therein granted. In such hearing the certificate of the Director of the Bureau of Prisons shall be prima facia [sic] evidence of the facts and conclusions certified therein. If the court shall find that the accused was mentally incompetant [sic] at the time of [his] trial, the court shall vacate the judgment of conviction and grant a new trial. (Added Sept. 7, 1949, ch. 535, S 1, 63 [Stat.] 686.'

"Upon examination by psychiatrist at D. C. Reformatory, petitioners I. Q. was found to be 53-Defective, and it is petitioners contention that such steps should have been taken by the Director of the Bureau of Prisons and/or the Director of the District of Columbia Department of Corrections as provided under this section, and that the court has a duty to act, under its equity powers, where said Director has failed to do so.

"Petitioner believes that if the question of mental competency to stand trial had been raised during or before trial, the results would have been similar to thoese [sic] in United States v. Louise Heinzel, D.C. (1958), where the Judge's instructions to the jury restricted them to considering a verdict of either not guilty, or not guilty because of insanity. The accused there had been found to have an I. Q. of 75, which which [sic] was termed a 'Borderline mental defective.' Surely, as much consideration, if not greater, should be given in determing [sic] the competency of petitioner to stand trial with the I. Q. of 53-Defective.

"Prayer

"Wherefore petitioner prays this court will vacate judgment and order a new trial via a hearing pursuent [sic] to sec. 4245 Title 18 U.S.Code. Appoint competant [sic] counsel to assist petitioner, so that the posture of petitioner's motion may be properly laid before the court in it's [sic] most favorable light, and in order that petitioner may have the effective assistance of counsel and due process of law which the sixth Amendment to the Constitution of the United States secures to petitioner. Your petitioner forever prays."

3. In the first paragraph of the opinion the judge said, "The motion is based on 28 U.S.C. § 2255, and on 18 U.S.C. § 4245." Later in the opinion, after referring to Smith's motion of April 6, 1957, which expressly invoked § 2255, he said, "On February 25, 1958, the defendant submitted by mail from the Reformatory, another handwritten motion *in propria persona* to vacate the judgment, this time invoking 18 U.S.C. § 4245, as well as 28 U.S.C. § 2255." The text of the later motion, reproduced in footnote 2, shows the District Court was in error in saying the movant invoked § 2255.

question concerning repetitive motions under § 2255 which as a matter of fact is not presented by the record.

I suppose they would give as the reason for such liberality of construction the fact that the present motion was not prepared by counsel but by Smith himself or another inmate of the Reformatory acting for him. Exactness in pleadings, my brothers probably would say, should not be required in such circumstances, and every indulgence should be granted to the unlettered applicant for relief. But the facts of this case do not justify this treatment.

There might be some reason to "treat" the § 4245 motion as having also been based on § 2255 had Smith been ignorant of the existence or nature of the latter section. The fact is that Smith was quite familiar with § 2255, and knew exactly what he was doing. He had had experience with § 2255, having expressly invoked that section in his 1957 motion, which was also prepared without the assistance of counsel.[4] So it is clear that he knowingly and deliberately omitted any reliance upon or reference to § 2255 in the new motion, and based it solely on § 4245.

I think a prisoner who has been convicted of three different vicious robberies committed within a period of nine days should have a heavy burden when, long after his conviction, he attempts to escape the consequences of his actions. He should be required strictly to comply with the statute he invokes. In my view, Smith should be held to the remedy he deliberately chose. I think therefore the only proper subject for examination here is whether he is entitled to relief under § 4245.

Turning to that question, I believe it is clear that chapter 313 of Title 18 of the U.S.Code (§§ 4241 to 4248 inclusive) has to do only with inmates of Federal penal and correctional institutions.

Smith is confined at the District of Columbia Reformatory at Lorton, Virginia, and is not under the jurisdiction of the Director of the Bureau of Prisons. Consequently he cannot invoke § 4245. Even if he were a Federal prisoner, Smith's motion under § 4245 would avail him nothing because, as the district judge said, the provisions of that section can be set in motion only by a certificate of the Director of the Bureau of Prisons.[5] There is not such a certificate in this case. Without one, a proceeding under § 4245 may not be instituted.

Even if the motion under § 4245 be "treated" as though it were made under § 2255, I think the sentencing court was correct in holding it was for relief similar to that Smith had asked in his 1957 motion under § 2255. That being so, the court's refusal to entertain it cannot be reviewed because § 2255 provides "The sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner."

The statute does not forbid the sentencing court to entertain a second or successive motion for similar relief. He may do so if he chooses, but he may not be required by us to do it. If an appellate court could review a sentencing court's refusal to entertain a second or successive motion for similar relief on behalf of the same prisoner, it could remand and require the sentencing court to entertain it. This would be in the teeth of the statute.

The appellate court may, however, review the holding that the motion is a second or successive one for similar relief; and if it reverses that holding, then it may require the sentencing court to entertain the motion. In other words, the only thing open to appellate review is whether the new motion is in law and fact a second or successive motion for similar relief. If it is not, the appellate

---

4. Smith thus labeled the motion of April 6, 1957: "Petition For Leave To File Motion and To Proceed In Forma Pauperis And A [*sic*] Affidavit In Support

Thereof Under Authority Title 28 U.S. Code Section 2255."

5. See also Hoskins v. United States, **6** Cir., 1957, 251 F.2d 51.

court may order it to be entertained. But if it is for similar relief, the sentencing court cannot be required to entertain it.

Smith's 1958 motion, which is now before us, if "treated" as under § 2255, is undoubtedly a second motion thereunder on behalf of the same prisoner. I suppose nobody will deny that. The only question then is whether it is "for similar relief." I think unquestionably it is, for the reasons set forth in the opinions of Judges PRETTYMAN and BASTIAN. That being true, we may not require the trial judge to entertain the second motion.

Judge FAHY'S opinion, stripped to its essentials, says the congressional purpose in enacting § 2255 was to make habeas corpus available in the convicting court, instead of in a court in the place of confinement; and that, therefore, res judicata does not apply under § 2255, no matter what the statute says.[6] In reaching this conclusion my brother virtually reads out of § 2255 the crucial sentence I have quoted and which is the keynote of this discussion. Its meaning is the goal we seek. I suggest the statute is clear and unambiguous.

Judge DANAHER also reads out of § 2255 the provision that "The sentencing court shall not be required to entertain a second * * * motion for similar relief * * *." He does so by relying on the succeeding sentence in the section, which is: "An appeal may be taken * * * from the order entered on the motion * * *." This language, he thinks, nullifies the immediately preceding provision that "The sentencing court shall not be required to entertain a sec-

ond * * * motion for similar relief * * *."

My view is that when the sentencing court refuses to entertain a second or successive motion for similar relief, the order refusing to do so is not an "order entered on the motion" from which an appeal may be taken.[7] It would be an idle thing for Congress to command that an appellate court shall not require the sentencing court to entertain a second or successive motion for similar relief, and then in the next sentence provide that an appeal may be taken from its refusal to entertain it, as a result of which the appellate court could require the sentencing court to do exactly the thing Congress had just said shall not be required.

For convenience in discussing Judge PRETTYMAN'S opinion, I reproduce its opening paragraph:

"I think Smith's second motion was a 'second or successive motion for similar relief' within the meaning of Section 2255. But I join in remanding the case because, although the trial court was not required by the statute to entertain the motion, I think it abused its discretion, in the legal sense of that term, in *not* entertaining the motion."

The conclusion as to a remand seems to me to be a *non sequitur*. He first stated, correctly I think, that "Smith's second motion was a 'second or successive motion for similar relief' within the meaning of Section 2255." Thus, in my view, it is clearly a motion which the sentencing court "shall not be required to entertain." One would suppose, then, that the characterization of the second

6. In thus equating the civil remedy of habeas corpus with a motion under § 2255, which is a step in the original criminal proceeding, he relies largely on United States v. Hayman, 1952, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232. That case mentions but does not give the substance of the Report of the Committee on Habeas Corpus to the Judicial Conference, Sept. 1943; and does not mention S.Rep. Nos. 1526 and 1527

(80th Cong., 2d Sess. 1948) concerning the bills approved by the Judicial Conference.

7. It is not an order denying the motion, which United States v. Hayman, 1952, 342 U.S. 205, 209 note 4, 72 S.Ct. 263, 96 L.Ed. 232, says is appealable. It is, rather, a threshold refusal even to entertain the motion.

motion as one which the sentencing court shall not be required to entertain would lead inevitably to an affirmance of the sentencing court's action in refusing to entertain it.

But, not so; instead the *non sequitur* occurs. The opinion then says, "But I join in remanding the case because, although the trial court was not required by the statute to entertain the motion, I think it abused its discretion * * *" in not doing so. The *non sequitur* becomes even more apparent when we note that the words "although the trial court was not required by the statute to entertain the motion," do not tell the whole story: the statute not only does not require the sentencing court to entertain the motion but also contains the affirmative mandate that the sentencing court "shall not be required" to entertain it.

For this reason I say that in the opening paragraph of his opinion my colleague completely ignores the crucial statutory sentence I have quoted. For, although the sentencing court cannot be required to entertain a second motion for similar relief, which Judge Prettyman finds this motion to be, he nevertheless thinks the sentencing court should have entertained it and therefore would require him to do it, against the mandate of the statute.

I suggest again that the only reviewable thing about the sentencing court's action is his determination that the motion was a second one for similar relief. If that determination was correct,—and Judge PRETTYMAN says it was—then the statute which provides in unmistakable terms that he shall not be required to entertain it indisputably applies. No amount of language can remove the clear provision from the statute, nor justify ignoring it. It was deliberately written by Congress and simply and unequivocally forbids an appellate court to require a sentencing court to entertain a second or successive motion for similar relief.

I agree with my brothers PRETTYMAN and BASTIAN that a movant under § 2255 must set forth in his first motion all the reasons for relief which are known to him; that, having failed to do so, if he then files a second motion setting out a reason for relief which he knew or should have known when the first motion was prepared, such second motion should be held to be a "second motion * * * for similar relief * * *." Otherwise he could present in each of several successive motions a single reason for relief when all had been known to him in the first instance; such a procedure would amount to disregarding the statute and trifling with the court.

Consequently, Smith should have alleged in his 1957 motion under § 2255 that he was mentally defective because, if he is defective now, he was defective then; or he must satisfactorily explain why he asserted for the first time in the 1958 motion that he is mentally defective. The penalty for postponing the allegation without adequate explanation of delay is that the subsequent motion will be held to be "a second or successive motion for similar relief" which the sentencing judge may, but cannot be required to, entertain. Whether to entertain it is entirely within the discretion of the sentencing judge, a discretion which cannot be controlled by an appellate court, because Congress has said the District Court cannot be required to entertain a second or successive motion for similar relief.

Assuming for discussion, without conceding, that Smith's 1958 motion was not for relief similar to that requested in his 1957 motion, there still remains the question whether the new motion sufficiently suggested mental incompetency to stand trial so as to require a hearing under § 2255. For the reasons given by Judge BASTIAN, I think the allegation would not have been sufficient to raise an issue as to whether Smith was too mentally defective to stand trial, had it been offered in the first instance. For the motion does not allege he was so mentally defective that he could not understand the nature of the charges against him or assist in his own defense. The files and records show the contrary.

He does not even affirmatively allege he has the low I.Q. he says a doctor once attributed to him.

Not only do I dissent from the majority's order remanding the case for a hearing as to Smith's mental competency at the time of trial. I question its sufficiency as well. If his present motion is to be "treated" as a motion under § 2255 alleging mental incompetency at the time of trial, it must also be "treated" as a motion under § 24–301(a) of the D.C. Code (1951) for a determination of mental competency to stand a new trial, should one be ordered. This is so because Smith's claim of mental incompetency at the time of trial rests solely upon his allegation that a prison test showed him to be mentally *defective*; as a mental *defect* does not improve, the allegation of its existence puts in issue not only his mental competency at the trial but also his present and future mental competency to stand a new trial, if his sentences should be vacated.

As the case is being remanded, the District Court should be directed to grant a hearing on both issues and to make findings both as to Smith's competency at the time of trial and his present competency. If that court finds Smith was incompetent at the time of his trial, it should vacate the sentence and order a new trial. If the court should also find—which it must in that event—that he is presently incompetent to stand trial, it should order the prisoner confined in a hospital for the mentally ill until such time, if ever, as he is restored to mental competency,—as provided in § 24–301(a) and (b), D.C.Code (1951), Supp. VI (1958).

This procedure would not produce the desired result of freeing the prisoner, as it would insure that he either serves his present sentences or spends the rest of his life in a mental institution. Faced with that alternative, Smith would probably prefer to dismiss this appeal and serve the sentences.

I would affirm the judgment of the District Court.

BASTIAN, Circuit Judge (dissenting).

I agree with the dissenting opinion of Judge MILLER, and think the following additional reasons indicate that the judgment of the District Court should be affirmed.

Even were it correct to treat appellant's motion as one filed under § 2255—and for reasons set forth in Judge Miller's opinion I do not think it should be so treated—the motion should be overruled.

The trial court held that the facts set forth in the motion were insufficient to warrant a finding that there might be probable cause to believe appellant had been mentally incompetent to stand trial, and also held that it was not required to entertain the motion because it was a second or successive motion for similar relief on behalf of the same prisoner. Section 2255 provides, in part, that "[t]he sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner."

In Morris v. United States, 1957, 101 U.S.App.D.C. 296, 297, 248 F.2d 618, 619, the court said:

"The appeal now before us is from the denial without hearing of a motion under Section 2255, Title 28, United States Code, filed February 8, 1957. It was the third such motion of the same import filed by Morris. No appeal was taken from the denials of the first two motions. The statute (Section 2255 of Title 28) provides that 'The sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner.' Thus under the specific terms of the statute the court was not required to entertain the motion now before us. That disposes of the case."

The court nevertheless reviewed the action of the trial court as that court had in fact considered the whole file in pass-

ing upon the last motion—in effect exercising its discretion in so doing.

In Turner v. United States, 1958, 103 U.S.App.D.C. 313, 258 F.2d 165, 167 [following Price v. Johnston, 1948, 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed. 1356], we stated:

"Absent some allegation or evidence as to what is the 'justifiable reason' or 'unawareness,' the District Court is under no duty to grant a hearing on what appear on the face of the petition to be old claims; indeed without such allegations the District Judge cannot even be aware of a possible basis for exercising his discretion to grant a hearing, applying the standards of Price v. Johnston * * *."

See also Plummer v. United States, 104 U.S.App.D.C. 211, 260 F.2d 729, decided by this court October 9, 1958, where we reaffirmed this principle.

Applying the above quoted statement from Turner to the facts in this case, I feel that the District Court was quite justified in holding that it was not required to entertain appellant's motion.

That the trial court, in the present case, gave careful consideration to the motion, in order to determine whether to exercise his discretion, is evidenced by the opinion, wherein the court stated:

"The court is motivated [in denying the motion] by the obvious fact that the ground on which this motion is based is manifestly an afterthought. There was no suggestion at the trial by defense counsel, who was zealous and energetic in the protection of his client's rights, or by the defendant's mother or brother who testified in his behalf, or by the defendant himself, that he was mentally incompetent to understand the nature of the proceedings against him, or to assist in his defense. The interview that the Probation Officer had with him in the course of the presentence investigation did not disclose any mental abnormality or any inability to discuss his case intelligently. On the contrary, he seemed to understand his position fully, as he informed the Probation Officer that he did not take the stand in his own behalf at the trial because his lawyer said everything that was necessary in his behalf. To hold a hearing at this late date as to the mental competency of the defendant in January, 1956,—more than two years ago—would be a burdensome and entirely unnecessary proceeding, and indeed it might be difficult to produce evidence bearing on that question because of the remoteness of time." D.C.D.C.1958, 160 F. Supp. 256, at page 260.

There is absolutely nothing in the February 25, 1958 motion to indicate that appellant was mentally incompetent to stand trial. He makes no such direct allegation.[1] All that is alleged by appellant is that he was examined by a psychiatrist at the D. C. Reformatory and was found to have an I.Q. of 53-Defective; that fact, however, does not constitute sufficient reason to believe that appellant was mentally incompetent to stand trial.[2] Although it might be considered in connection with a determination of his mental incompetency, appellant's I.Q., standing alone, would be insufficient to require a hearing, and no other *facts*

---

1. It is well settled that the moving party on a motion under § 2255 undertakes a heavy burden to overcome the regularity of a conviction. This is especially true when the attack comes a long time after the event. The motion must present detailed facts and not merely conclusions of law. United States v. Sturm, 7 Cir., 180 F.2d 413, certiorari denied, 1950, 339 U.S. 986, 70 S.Ct. 1008, 94 L. Ed. 1388.

2. The Government tells us that "[a]ctually there was no psychiatrist at the Reformatory during his incarceration. The test given him was the Army Beta test given to all inmates at the time of commitment in order to ascertain the type of duties to which a prisoner should be assigned. It was given by a psychologist and not a psychiatrist."

are alleged in the motion. Many people having an I.Q. rating such as appellant claims are, nevertheless, legally responsible for their actions. An intolerable situation would exist if all persons with such an I.Q. could roam the streets, commit crimes and, by reason of their low intelligence, escape punishment.

Nor is there the slightest claim that the facts alleged in the petition were unknown to appellant at the time of his previous motion or that there was some justifiable reason why he was previously unable to assert his rights or was unaware of the significance of relevant facts.

Regardless of the reasoning of the several opinions reflecting the various views of those judges who favor a remand, the effect of remanding this case is to read out of § 2255 the words "the sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner," and to overrule Morris, Turner and Plummer.

Two interesting articles, "Use And Abuse Of The Writ Of Habeas Corpus" by Chief Judge Louis E. Goodman (N.D. Cal., 9th Cir.) and "Limiting The Abuse Of Habeas Corpus" by the late Chief Judge John J. Parker (4th Cir.), may be found at 7 F.R.D. 313 and 8 F.R.D. 171, respectively. These articles indicate the extent to which the writ has been abused and the reasons why reasonable discretion in disposing of abusive petitions should not be whittled down.

I would affirm on the grounds (1) that the court is not required in any event, under the circumstances of this case, to entertain the motion; (2) that there are insufficient facts alleged to warrant a finding by the trial court that there might be probable cause to believe that appellant was mentally incompetent to stand trial; and (3) that, in fact, the trial judge carefully considered the motion and properly exercised his judicial discretion. Certainly it cannot be said that there was an abuse of discretion on the part of the District Judge. I agree with Chief Judge Goodman in his statement:

"In my opinion judicial discretion to appropriately deal with these abusive practices should be strengthened and not weakened." 7 F.R.D. at page 316.

In remanding the case, we are weakening the hands of the District Court judges in dealing with the abuses under § 2255.

I am authorized to say that Judge MILLER concurs in this dissent.